In re A.N.

[Cite as In re A.N., 181 Ohio App.3d 793, 2009-Ohio-1873.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 92433 and 92451.

Decided April 23, 2009.

794

Kevin H. Cronin, for appellant C.J.

Timothy R. Sterkel, for appellant R.N.

William D. Mason, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney, for appellee, Cuyahoga County Department of Children and Family Services.

Jason G. Kasunick, guardian ad litem.

MELODY J. STEWART, Presiding Judge.

{¶ 1} The mother, C.J., and the father, R.N., appeal from a juvenile division order that granted permanent custody of their daughter, six-year-old A.N., to the Cuyahoga County Department of Children and Family Services (the "agency"). The mother complains that the court failed to adequately consider whether she had the requisite mental competency to assist assigned counsel in defending the agency's motion for permanent custody. The father complains that he was denied the effective assistance of counsel because his attorney failed to attend a number of court hearings and that the court lacked clear and convincing evidence to justify awarding permanent custody to the agency. We consolidated the separate appeals for hearing and disposition and have expedited the hearing and disposition of these appeals as required by App.R. 11.1(D).

I

{¶ 2} The mother argues that the court erred by declaring her competent to participate in the proceedings on the agency's motions for temporary and

permanent custody. She maintains that despite an expert opinion to the contrary, her well-documented history of current mental illness showed that she lacked the ability to assist counsel in the proceedings against her. The state contends that there is no requirement that the mother be competent to assist in defending custody rights in a juvenile court case, because her mental illness itself is a basis for granting permanent custody to the agency.

## A

{¶ 3} The mother incorrectly seeks to apply her right to counsel to suggest that her inability to assist her court-appointed attorney in defending the agency's motion for permanent custody prohibited the court from going forward.

{¶ 4} The right to counsel in proceedings to terminate parental rights is a due-process right. *Lassiter v. Durham Cty. Dept. of Social Serv.* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. Ohio, however, "provides a statutory right to appointed counsel that goes beyond constitutional requirements." *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 46, 693 N.E.2d 794. Under R.C. 2151.352, a child's parents are entitled to representation by legal counsel at all stages of the proceedings under R.C. Chapter 2151.[1] Id. at 48, 693 N.E.2d 794; *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 15–16.

{¶ 5} Unlike criminal cases, in which the test of a defendant's competency to stand trial is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him," *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, there is no such test in custody cases in the juvenile court. To the contrary, the Revised Code specifically contemplates that a parent's mental illness might form the basis of a motion for permanent custody when it is "so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year" after the hearing on permanent custody. See R.C. 2151.414(E)(2). It follows that a parent's mental illness is not, by itself, a basis for finding that a parent cannot understand the nature of the proceedings in a way that would violate due process.

{¶ 6} In any event, "[t]he term 'mental illness' does not necessarily equate with the definition of legal incompetency." *State v. Berry* (1995), 72 Ohio

---

1. Juv.R. 4(A) also provides that "every party" to a juvenile court proceeding "shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent."

St.3d 354, 650 N.E.2d 433, syllabus. Although the mother's mental illness was in large part the basis for the agency's request for permanent custody,[2] the parties agreed that she was competent to understand the nature of the legal proceedings. A court-appointed psychologist who interviewed the mother following the court's competency referral concluded with a reasonable degree of psychological certainty that the mother "understands the nature of the case plan and her responsibilities" and was "aware of the consequences of not following through with her case plan being losing permanent custody." The psychologist concluded that the mother "is capable of understanding the nature of and objectives of her DCFS legal proceeding, and is minimally capable of assisting in her defense."

{¶ 7} When the court convened the parties for a hearing on the mother's competency, her attorney said, "We'll stipulate to [the competency] report." The court issued a journal entry in which it noted that it had reviewed the psychologist's conclusions and, further noting that the mother had both legal counsel and a guardian ad litem appointed to represent her interests, found that she was "sufficiently competent to participate in these proceedings."

{¶ 8} Given her attorney's stipulation to her competency, the mother cannot now complain that the court erred by finding her competent to participate in the proceedings.

B

{¶ 9} The mother also complains that the court erred during the adjudicatory phase by accepting her admission that the child had been abused and neglected without first ensuring that she had knowingly entered that admission pursuant to Juv.R. 29.

{¶ 10} We have no jurisdiction to consider this argument because the mother did not separately appeal from that order. R.C. Chapter 2151 employs a two-stage procedure for awarding temporary custody of a child to a children's services agency: the "adjudication" stage, at which a child is declared, among other things, neglected or dependant, and a "dispositional" stage, at which the court awards temporary custody to a public children's services agency pursuant to R.C. 2151.353(A)(2). See *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, syllabus. "An appeal of an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must

---

**2.** The mother suffered from "schizoaffective disorder, bipolar type by history." She had delusions relating to rap artists and "had little insight into her mental illness and did not believe she needed to take medications but she had been taking them because of her terms of probation."

be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, syllabus.

{¶ 11} The mother did not appeal within 30 days from the neglect adjudication and dispositional order that placed the child into the agency's temporary custody. We therefore lack jurisdiction to address any arguments relating to those proceedings.

II

{¶ 12} The father first argues that the court erred by granting the agency's motion for permanent custody because he participated in the court proceedings and expressed an interest in taking custody of the child.

{¶ 13} The court terminated the father's parental rights by finding clear and convincing evidence that permanent custody was in the best interest of the child, because after the child had been placed outside the home, the father failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home; the father had demonstrated a lack of commitment to the child by failing to regularly support, visit, or communicate with the child; and the father had abandoned the child. The court also found that the child had been in the temporary custody of the agency for 12 or more months of a consecutive 22–month period. See R.C. 2151.414(B)(1)(d). The father does not dispute the court's finding that the child had been in the agency's temporary custody for 12 or more months of a consecutive 22–month period. The question is whether the court had clear and convincing evidence to show that a grant of permanent custody was in the best interest of the child.

{¶ 14} When considering whether there is clear and convincing evidence that a child's best interest requires the court to grant permanent custody to a children's services agency, the court must consider the nonexhaustive factors set forth in R.C. 2151.414(D):

{¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

{¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 20} Although the court must consider all of the R.C. 2151.414(D) factors, only one of them needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights. See *In re Z.T.*, Cuyahoga App. No. 88009, 2007-Ohio-827, 2007 WL 613998, ¶ 56; *In re T.M.*, Cuyahoga App. No. 83933, 2004-Ohio-5222, 2004 WL 2340654. "Clear and convincing" evidence is evidence sufficient to cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof." *In re Dylan C.* (1997), 121 Ohio App.3d 115, 121, 699 N.E.2d 107.

{¶ 21} The evidence showed that the father had no presence in the child's life until after the agency obtained temporary custody of the child in July 2006. A case plan implemented by the agency required the father to establish paternity, attend parenting classes, and obtain employment. The father established paternity and attended some parenting classes, but was thereafter dismissed from the parenting class due to nonattendance. The father did not obtain employment.

{¶ 22} The case plan also called for the father to establish suitable housing for the child. At the time the agency obtained temporary custody of the child, the father shared a two-bedroom apartment with another male. The agency considered this inappropriate housing for the child, and the father indicated that he would be willing to move in with his grandmother. The father did not, however, contact the agency to inform it whether he had obtained adequate housing.

{¶ 23} The facts belie the father's contention that he participated in the proceedings. The agency showed that the father had a single visit with the child in November 2006. Although the visit went well, the father did not respond to the agency's later attempts to contact him for additional visitations, and the father himself did not request any additional visitation. Apart from the November 2006 visitation with the child, the father had no further involvement in the case, despite the agency's repeated attempts to contact him. As of the October 2008 dispositional hearing, the father had not attended any court hearing, despite being served with notice at both his apartment and his grandmother's house.

{¶ 24} The father demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child. Moreover, the child had been progressing well in foster care, and the foster parents had indicated their desire to adopt her. Finally, the child's guardian ad litem recommended granting permanent custody to the agency, specifically noting that he had discussed with the father the possibility of custody, but that after the father showed an initial interest, "he subsequently did not participate" in the proceedings. These facts constitute clear and convincing evidence that a grant of permanent custody to the agency was in the child's best interest.

## III

{¶ 25} Finally, the father argues that he was denied the effective assistance of counsel because his court-appointed attorney failed to attend any of the proceedings after the July 2006 hearing on the agency's motion for temporary custody. The agency maintains that the court appointed counsel solely for purposes of the adjudicatory phase and that it was incumbent on the father to request a new appointment of counsel after the agency filed its motion for permanent custody.

## A

{¶ 26} We find no basis for the agency's assertion that the father's legal representation terminated when the court granted temporary custody of the child to the agency. The court order appointing the father's attorney specifically referred to R.C. 2151.352. That section states: "A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel *at all stages of the proceedings under this chapter* or Chapter 2152. of the Revised Code." (Emphasis added.) As earlier noted, there are two stages in permanent-custody proceedings brought under R.C. Chapter 2151—the adjudicatory stage and the dispositional stage. See *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 233, 17 OBR 469, 479 N.E.2d 257. Even though these stages are distinct in that orders rendered from them are considered final and appealable, *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, the fact remains that R.C. 2151.352 acknowledges the separate nature of the adjudicatory and dispositional phases by referring to "stages," in the plural. This section applies with equal force to both the adjudicatory and the dispositional phases of the proceedings, so the court plainly ordered that counsel be appointed for the duration of all stages in the custody matter.

{¶ 27} We also fail to see how the agency's argument can succeed when the record plainly shows that the mother's assigned counsel and the guardians ad litem for the mother and child continued to appear at the dispositional stage of

the proceedings without further reappointment by the court. If the mother's attorney could continue to serve without reappointment by the court or objection from the agency, the agency's argument relating to the father's attorney is wholly undermined.

{¶ 28} In any event, the record shows that the father's attorney continued aspects of representation after the court had completed the adjudicatory phase, and the court specifically recognized that fact. On January 24, 2008, counsel for the father filed motions for discovery and for permission to inspect any mental-health reports or assessments of the parties. These motions postdated the adjudicatory phase of the proceedings, so it is plain that the father's attorney continued to represent the father. We therefore find that the father's attorney remained duly appointed for all stages of the proceedings.

B

{¶ 29} The father next argues that his assigned counsel was ineffective for failing to attend a number of hearings conducted by the court, including the hearing on the agency's motion for permanent custody.

{¶ 30} We review ineffective assistance of counsel claims using the test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674: ineffective assistance of counsel consists of (1) an error by counsel that was professionally unreasonable and (2) but for that error, the result or verdict would have been different. Id.

{¶ 31} The father's assertion that his attorney missed every hearing is not entirely accurate. The record shows that the attorney missed hearings on December 6, 2006, and March 15, May 17, and June 21, 2007, but that the court failed to offer adequate notice of the hearings to the attorney.

{¶ 32} The attorney did, however, miss hearings on February 8, February 12, August 14, and October 17, 2007, and March 19, June 5, and October 21, 2008, despite having notice. Not all of these hearings specifically required the father's presence—for example, the February 12, 2007 hearing concerned the agency's motion to suspend the mother's visitation and did not directly implicate the father. Nevertheless, the court did express concerns during the October 17, 2007 hearing about the attorney's failure to attend hearings. The court stated that it would attempt to reach the father's attorney and that if it did not receive a response from him within 24 hours, the attorney would be removed and the father would have to reappear in court to request the appointment of new counsel.

{¶ 33} Obviously, the court had such significant concerns about the attorney's absences that it considered removing the attorney. No extenuating

circumstances to justify the attorney's absence from so many hearings are apparent on the record. At the very least, the attorney had the obligation to appear for the permanent-custody hearing. We therefore find that the father established that the attorney's conduct fell below a standard of reasonable representation.

{¶ 34} Despite finding that the attorney breached an essential duty to the father by failing to attend the hearings, we cannot say that but for the attorney's failure to attend the hearings, the father would not have lost custody of the child. The father showed no commitment to retaining custody of the child and missed every single hearing held in the case, despite having notice of those hearings. Although the father did attend a few parenting classes, he was dismissed from those classes due to nonattendance. He did not complete the case-plan objectives of obtaining stable employment and establishing suitable housing. The child's guardian ad litem reported that he spoke with the father and discussed the possibility of the father's taking custody of the child and that despite the father showing an interest, the father "subsequently did not participate." A social worker assigned to the case testified that the father participated in just one scheduled visitation, but that he had not asked for any further visitation, nor had he responded to repeated attempts to contact him.

{¶ 35} The evidence plainly shows that the father abandoned any desire to obtain custody of the child. Moreover, he failed to attend any of the court hearings, including the hearing on the agency's motion for permanent custody, despite having notice. Under the circumstances, we see no reasonable probability that but for counsel's failure to attend the hearings, the father would have retained custody of the child.

Judgment affirmed.

BOYLE and SWEENEY, JJ., concur.