[Cite as *In re S.B.*, 2014-Ohio-4839.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 101159 and 101160**

**IN RE: S.B., et al.**
**Minor Children**

[Appeal By P.B., Father]

**JUDGMENT:**
AFFIRMED

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-12909935 and AD-10921733

**BEFORE:** Celebrezze, P.J., Keough, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 30, 2014

**ATTORNEY FOR APPELLANT**

Dale M. Hartman
2195 South Green Road
Cleveland, Ohio   44121


**ATTORNEYS FOR APPELLEE C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Mark Adelstein
Assistant Prosecuting Attorney
Cuyahoga County Division of Children and Family Services
8111 Quincy Avenue, Room 450
Cleveland, Ohio   44104

BY:    Yvonne C. Billingsley
Assistant Prosecuting Attorney
Cuyahoga County Division of Children and Family Services
3955 Euclid Avenue, Room 305E
Cleveland, Ohio   44115


**ATTORNEY FOR MOTHER**

Jeffrey Froude
P.O. Box 771112
Lakewood, Ohio   44107


**GUARDIAN AD LITEM FOR CHILDREN**

Wildon V. Ellison
12020 Lake Avenue
Suite 205
Lakewood, Ohio   44107

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant-father, P.B. ("appellant"), appeals from a juvenile division order that placed his two children, M.B. and S.B., in the permanent custody of appellee, Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm.

## I. Procedural History

{¶2} Mother, J.C. ("Mother") married Je.C. in 2006. Their relationship was verbally and physically abusive. In 2008, mother and Je.C. had a child K.M.J.C. They divorced in February 2013.

{¶3} During the marriage of mother and Je.C., mother began a relationship with appellant. Mother and appellant have two children together: M.B., born November 19, 2010, and S.B., born June 12, 2012. Mother and appellant also had a verbally and physically abusive relationship. At the time of the births of M.B. and S.B., mother was still legally married to Je.C., but was living with appellant.

{¶4} On August 3, 2010, K.M.J.C. was adjudicated abused and neglected and committed to the temporary custody of CCDCFS.

{¶5} Following the birth of M.B., CCDCFS filed a complaint on November 22, 2011, alleging him to be a dependent child and requesting a disposition of temporary custody to the agency. CCDCFS was awarded predispositional temporary custody the same day.

{¶6} On February 16, 2011, M.B. was committed to the temporary custody of CCDCFS based on mother's admission that K.M.J.C. was previously placed in the temporary custody of

the agency, that she had insufficient income to provide for the child, that she continued to endure domestic violence from Je.C., that appellant had a history of domestic violence, and that she had been diagnosed with depression and post-traumatic stress disorder.

{¶7} Following the removal of M.B. from his parents, CCDCFS developed a case plan to facilitate the goal of reunification. Appellant's court-ordered case plan included mental health treatment, parenting classes, substance abuse counseling, stable housing, and stable income.

{¶8} On May 16, 2011, CCDCFS filed a motion to modify the order of temporary custody of K.M.J.C. to an order of permanent custody. On June 17, 2011, CCDCFS filed a motion to modify the order of temporary custody of M.B. to an order of permanent custody.

{¶9} While CCDCFS's motions for permanent custody of K.M.J.C. and M.B. were pending, mother and appellant had S.B. The agency took emergency custody of S.B. at birth based on allegations that mother and appellant were in an abusive relationship, appellant had three children from another relationship who were committed to the legal custody of a relative, and that mother had mental health issues.

{¶10} On June 15, 2012, CCDCFS filed a separate complaint seeking permanent custody of S.B. On October 9, 2012, at the adjudicatory hearing, appellant stipulated to amended allegations in the complaint. The trial court found S.B. to be a dependent child and continued the prior order of temporary custody to CCDCFS.

{¶11} On February 13, 2013, appellant had a court-ordered psychological evaluation completed by Dr. Steven Neuhaus of the Juvenile Court Diagnostic Clinic. Appellant was diagnosed with major depression, mood disorder, mild mental deficiencies, and pathological grief reaction.

**{¶12}** All three complaints for permanent custody were joined, and the dispositional hearing commenced on May 17, 2013. At the conclusion of the permanent custody proceedings, the juvenile court found that, notwithstanding reasonable case planning and diligent efforts by CCDCFS to assist the parents, mother and appellant failed to remedy the conditions that caused the children to be removed from the home. By journal entry dated February 27, 2014, K.M.J.C., M.B., and S.B. were placed in the permanent custody of the agency.

**{¶13}** Appellant appeals the decision of the juvenile court granting permanent custody of his children, M.B. and S.B., to the agency.

## II. Law and Analysis

### A. Notice Requirements

**{¶14}** In his first assignment of error, appellant argues that the trial court erred by failing to follow the mandates of Juv.R. 29 during the October 9, 2012 adjudicatory hearing for S.B.

**{¶15}** Juv.R. 29 governs adjudicatory hearings before a juvenile court and requires the court to perform certain duties at the beginning of a hearing. The purpose of Juv.R. 29(B) is to provide a "checklist" to aid the court in determining whether the parties have been afforded due process requirements. *In re Shepherd*, 4th Dist. Highland No. 00CA12, 2001-Ohio-2499. In addressing the notice requirements of Juv.R. 29, we review the record for substantial compliance. *In re Clark*, 141 Ohio App.3d 55, 59, 749 N.E.2d 833 (8th Dist.2001); *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177 (stating that most courts of appeals have held that only substantial compliance with Juv.R. 29 is needed). "The issue is not whether the judge strictly complied with rote, but whether the parties adequately understood their rights and the effect of their admissions." *In re Clark* at 59.

**{¶16}** Without addressing the validity of appellant's notice arguments, we are unable to reach the merits of appellant's claims because he did not appeal from the juvenile court's adjudicatory order journalized October 22, 2012, finding S.B. to be a dependent child. *See In re M.W.*, 8th Dist. Cuyahoga No. 91539, 2009-Ohio-121; *In re A.N.*, 181 Ohio App.3d 793, 2009-Ohio-1873, 910 N.E.2d 1110 (8th Dist.).

**{¶17}** In *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, the Ohio Supreme Court reaffirmed its holding in *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), that

> [a]n adjudication by a juvenile court that a child is "neglected" or "dependent" as defined by R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a "final order" within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02.

*In re H.F.* at ¶ 8.

**{¶18}** The Ohio Supreme Court determined that App.R. 4(B)(5) does not provide an exception to App.R. 4(A) in this situation because, although adjudication orders constitute "final orders," they do not constitute "partial final orders," and the exception in App.R. 4(B)(5) only applies to "partial final orders." *Id*. at ¶ 12. It reasoned that an adjudication order concludes "the immediate action between the parties," and "there is no assurance that a parent would have an alternate opportunity to appeal an adjudication order." *Id*. at ¶ 13-14. It further reasoned that after a juvenile court adjudicates a child abused, neglected, or dependent, "there are no issues left pending." *Id.* at ¶ 15. It concluded that no issues remain pending even though the juvenile court retains jurisdiction to eventually enter a final disposition for the child. *Id*. at ¶ 16.

**{¶19}** Thus, based on the Ohio Supreme Court's holding in *In re H.F.*, this court does not have jurisdiction to address appellant's first assignment of error because he did not appeal from the adjudication order within 30 days of its entry pursuant to App.R. 4(A).

**{¶20}** Appellant's first assignment of error is overruled.

### B. Permanent Custody

**{¶21}** In his second assignment of error, appellant argues that the trial court's decision granting permanent custody of the children to CCDCFS was against the manifest weight of the evidence.

**{¶22}** We begin with the recognition that "a parent's right to raise a child is an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). This court has emphasized that the "termination of the rights of a birth parent is an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. "The purpose of the termination of parental rights statutes is to facilitate adoption and to make a more stable life for dependent children." *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, *5 (Aug. 1, 1986).

**{¶23}** A juvenile court's termination of parental rights and award of permanent custody to an agency is not reversed unless the judgment is not supported by clear and convincing evidence. *In re: Dylan C.*, 121 Ohio App.3d 115, 121, 699 N.E.2d 107 (6th Dist.1997). Clear and convincing evidence is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a

reasonable doubt. *In re Parsons*, 9th Dist. Lorain Nos. 97CA006662 and 97CA006663, 1997 Ohio App. LEXIS 5141 (Nov. 12, 1997).

### i. R.C. 2151.414

{¶24} R.C. 2151.414 provides guidelines a trial court must follow in deciding a motion for permanent custody. The statute sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. R.C. 2151.414(B). First, it authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of these four factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a)-(d).

{¶25} In the event that R.C. 2151.414(B)(1)(a) applies, and the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents, a trial court must consider the factors outlined in R.C. 2151.414(E). *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14. The presence of only one factor will support the court's finding that the child cannot be reunified with the parent within a reasonable time. *Id.* The relevant factors include the following:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the

child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.
(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(16) Any other factor the court considers relevant.

{¶26} If any of the factors outlined in R.C. 2151.414(B)(1)(a)-(d) exist, the trial court proceeds to the second part of the analysis: whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency.

{¶27} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement

and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶28} "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).

{¶29} Our review of the record in this case shows that the trial court's decision to award permanent custody of the children to the agency was supported by clear and convincing evidence.

{¶30} First, the record fully supports the juvenile court's initial determination that the children could not or should not be placed in the custody of either parent pursuant to R.C. 2151.414(B)(1)(a). The record shows that following placement of the children outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents, the parents failed to remedy the problems and demonstrated a lack of commitment towards the children by failing to regularly support, visit, or communicate with the children when able to do so. *See* R.C. 2151.414(E)(1) and (4).

{¶31} With respect to appellant, CCDCFS social worker Linda Yeldell testified that, although appellant completed the substance abuse counseling and parenting class portions of his case plan, he did not benefit from the programs. Yeldell further testified that appellant was "inconsistent and noncompliant" with the mental health counseling recommendations of CCDCFS, was inconsistent with his mental health medication, was inconsistent with visitation,

demonstrated continuing anger issues, and demonstrated an unwillingness to provide a stable home for his children.

{¶32} In turning to the second prong of the permanent custody analysis, we find that there was clear and convincing evidence to support the trial court's determination that awarding permanent custody to CCDCFS was in the best interest of the children.

{¶33} Here, foster care custodian S.S. testified that K.M.J.C., M.B., and S.B. have developed strong bonds with each other and with S.S. and her family. S.S. testified that she deeply loves the children and wishes to adopt all three children pending the court's custody decision. R.C. 2151.414(D)(1)(a). Furthermore, Wildon Ellison, the guardian ad litem for the children, recommend permanent custody to the agency based on their strong bond and interaction with the foster care custodian, the improvement in the children's quality of life since being placed with the foster care custodian, and the safe and appropriate residence provided by the foster care custodian. R.C. 2151.414(D)(1)(b). Finally, as discussed above, legally secure permanent placement could not be achieved without a grant of permanent custody to the agency based on the parents' failure to complete the objectives of their respective case plans. R.C. 2151.414(D)(1)(d).

{¶34} In light of the foregoing, we find that the trial court considered the relevant statutory factors. We further find that the trial court's determination that the children could not or should not be placed with either parent within a reasonable time and that permanent custody with CCDCFS is in the best interest of the children was supported by clear and convincing evidence.

{¶35} Appellant's second assignment of error is overruled.

### C. The "Bed Bug Decree"

{¶36} We review appellant's third and fourth assignments of error out of order for clarity. In his fourth assignment of error, appellant argues that the trial court's "bedbug decree" was an abuse of discretion and was a violation of due process. We disagree.

{¶37} On September 18, 2013, after ten days of trial, the trial court was advised that "there is some concern that one of the parents has bed bugs and there has been an infestation of bed bugs that have been reported on the parents." (10 TP-1467.) In the interest of public safety, the trial court adjourned proceedings for the day. On September 19, 2013, the trial court held an attorney conference in which the court determined that it would take a several-week recess. The court warned the parties that "if the parents have not solved the issue of their bed bugs, then they would be excused from trial." When the court reconvened on October 9, 2013, neither parent could provide documentation assuring the court that the bed bugs were eliminated from their home or clothing. Over objection, the trial court stated that it would proceed with the trial on October 24, 2013, without the presence of appellant or mother unless they provided documentation showing that the public health risk had been remedied. The trial court found that the need for permanency for the children outweighed the rights of the parents to be present. Appellant provided the required documentation on October 31, 2013, and was permitted to participate in the conclusion of trial.

{¶38} In challenging the trial court's decree, appellant argues that the trial court's actions constituted a "dreadful abuse of discretion" and unconstitutionally deprived him of his right to attend trial. We disagree.

{¶39} It is true that the "permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." * * * Therefore, parents "must be afforded every procedural and substantive protection the law allows." *In re Hayes*, 79

Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). However, permanent custody cases remain civil in nature, and the statutory and constitutional rights afforded to the accused in a criminal case do not apply to parental rights cases. Accordingly, appellant had no absolute right to be present at all stages of the permanent custody trial.

{¶40} Under the circumstances of this case, we find that the trial court did not err in excluding appellant from trial until the public health hazard was remedied. Here, the trial court had a substantial interest in protecting those involved in the proceedings, including court personnel, from the perceived health hazard. Moreover, the court had an interest in resolving this matter and placing the children in a permanent home as soon as efficiently possible. We agree with the trial court's statements that the children's "need for permanency" outweighed appellant's right to be present at trial proceedings, particularly where appellant's inability to be present derived from his own actions and subsequent inactions.

{¶41} Appellant's fourth assignment of error is overruled.

### D. Motions for Continuance

{¶42} In his third assignment of error, appellant argues that the trial court abused its discretion by denying his motions for continuance.

{¶43} The decision to grant or deny a motion for continuance is left to the broad and sound discretion of the trial judge, and an appellate court may not disturb the trial court's ruling absent an abuse of discretion. *Cleveland v. Washington*, 8th Dist. Cuyahoga Nos. 97945 and 97946, 2013-Ohio-367, ¶ 11, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

{¶44} A reviewing court determines on a case-by-case basis whether the trial court's denial of a continuance motion was so arbitrary as to deprive the defendant of due process,

paying particular attention to the reasons presented to the trial judge at the time the request was denied. *Unger* at 67. In determining whether the trial court abused its discretion, an appellate court "weighs * * * any potential prejudice to a defendant [against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.*

{¶45} In the case at hand, appellant challenges the trial court's denial of counsel's repeated motions for continuance while appellant was absent from trial proceedings pending resolution of the bed bug issue and the trial court's denial of a motion for continuance made on September 16, 2013. After reviewing the relevant portions of the trial transcript, we find that the trial court's decisions to deny the motions for continuance were reasonable under the circumstances.

{¶46} Regarding the September 16, 2013 motion for continuance, the record reflects that appellant's counsel requested a continuance because appellant had a seizure early that morning and was unable to appear. Counsel expressed that appellant was concerned that he would suffer another seizure if he was not able to rest. In denying counsel's motion, the trial court attempted to avoid any prejudice caused by appellant's inability to be present at the September 16, 2013 proceeding by informing counsel that "if there's issues that you think your client should be here for, any witness, you may recall them on your own when he is back." Thus, the trial court took reasonable steps to ensure that trial could proceed without prejudicing appellant. We find no abuse of discretion.

{¶47} With respect to the motions for continuance made while appellant was absent from trial due to the bed bug infestation, we have already held that the trial court acted in the best interest of the children by resolving the issue of permanency in the most efficient period of time

possible. Appellant was graciously given approximately five weeks to remedy the bed bug issue and failed to do so. Because appellant was represented by competent counsel throughout the proceedings, we find that he suffered no prejudice and that the trial court acted within its discretion in denying appellant's repeated motions for continuance.

**{¶48}** Appellant's third assignment of error is overruled.

### E. Mistrial and Recusal

**{¶49}** In his fifth assignment of error, appellant argues that the trial court erred in failing to recuse itself and in failing to declare a mistrial. Appellant concedes that he is unable to point to one specific action that created an inference of impropriety requiring the trial court to recuse itself and declare a mistrial. Instead, appellant urges this court to read the trial transcript in its entirety and find that the totality of the court's actions demonstrates that the trial was "so unfair as to be a mistrial." Having reviewed the record, we are unable to conclude that the trial court committed reversible error by failing to recuse itself and declare a mistrial. Given the complexity of the relationships and the number of children involved, we find that the trial court's case management was reasonable under the circumstances.

**{¶50}** Appellant's fifth assignment of error is overruled.

**{¶51}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the juvenile court division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MELODY J. STEWART, J., CONCUR