[Cite as *In re E.C.*, 2019-Ohio-3791.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: E.C., | : | |
| | | No. 18AP-878 |
| (M.W., | : | (C.P.C. No. 15JU-6089) |
| Appellant). | : | (REGULAR CALENDAR) |
| | | |
| In re: D.C., Jr., | : | |
| | | No. 18AP-882 |
| (M.W., | : | (C.P.C. No. 16JU-14039) |
| Appellant). | : | (REGULAR CALENDAR) |
| | | |
| In re: E.C., | : | |
| | | No. 18AP-902 |
| (D.C., Sr., | : | (C.P.C. No. 15JU-6089) |
| Appellant). | : | (REGULAR CALENDAR) |
| | | |
| In re: D.C., Jr., | : | |
| | | No. 18AP-907 |
| (DC., Sr., | : | (C.P.C. No. 16JU-14039) |
| Appellant). | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on September 19, 2019

**On brief:** *Robert J. McClaren*, for appellee Franklin County Children Services. **Argued:** *Robert J. McClaren*.

**On brief:** *Yeura Venters*, Public Defender, and *Robert D. Essex*, for appellant M.W. **Argued:** *Robert D. Essex*.

**On brief:** *William Paul Bringman*, for appellant D.C., Sr.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relation, Juvenile Branch

KLATT, P.J.

{¶ 1}    Appellants, M.W. ("mother") and D.C., Sr. ("father"), appeal judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that granted permanent custody of E.C. and D.C., Jr., to appellee, Franklin County Children Services ("FCCS").  For the following reasons, we affirm those judgments.

{¶ 2}    On April 26, 2015, mother gave birth to E.C.  Mother was unwed when E.C. was born.  Within days of E.C.'s birth, father signed an affidavit acknowledging his paternity of E.C.

{¶ 3}    FCCS filed a complaint alleging that E.C. was a dependent child on May 12, 2015, when E.C. was only two weeks old.  The complaint stated that mother suffered from multiple mental illnesses, including borderline personality disorder, bipolar disorder, and post-traumatic stress disorder.  Mother did not consistently take the medication prescribed to treat her mental disorders.  Additionally, mother lacked stable housing and was unemployed.  FCCS asked the trial court to adjudicate E.C. a dependent child and grant it an order of protective supervision over E.C.

{¶ 4}    On May 15, 2015, a magistrate granted FCCS a temporary order of protective supervision over E.C.  In a judgment dated July 31, 2015, the trial court found E.C. to be a dependent child and placed E.C. under court-ordered protective supervision.  Less than one year later, on March 22, 2016, FCCS assumed temporary custody of E.C. pursuant to a magistrate's order.  In a judgment entered September 12, 2016, the trial court officially terminated the court-ordered protective supervision of E.C. and committed E.C. to the temporary custody of FCCS.

{¶ 5}    Mother gave birth to D.C., Jr. on November 25, 2016.  At the time of D.C., Jr.'s birth, father was in prison serving a 16-month sentence for committing domestic violence against mother.  Father never legally established his paternity of D.C., Jr., but the parties presume that father is D.C., Jr.'s father.

{¶ 6}    In a complaint filed three days after D.C., Jr.'s birth, FCCS requested that the trial court find D.C., Jr. a dependent child and grant it temporary custody.  The complaint alleged that the hospital would not release D.C., Jr. because mother was homeless.  Also,

according to the complaint, FCCS had obtained temporary custody of E.C. due to mother's lack of stable housing, failure to complete parenting classes, and refusal to attend mental health or anger management counseling.

{¶ 7}  On November 29, 2016, the magistrate granted FCCS a temporary order of custody over D.C., Jr.  In a judgment entered December 7, 2016, the trial court adjudicated D.C., Jr. a dependent child and maintained the temporary order of custody issued by the magistrate.  After a dispositional hearing, the trial court issued a judgment on February 21, 2017 that reaffirmed its finding that D.C., Jr. was a dependent child and committed D.C., Jr. to FCCS' temporary custody.

{¶ 8}  On February 7, 2018, FCCS moved for permanent custody of both E.C. and D.C., Jr.  In the motions, FCCS alleged that both children had been in FCCS' temporary custody for 12 or more months of a consecutive 22-month period.  Regarding mother, the motion stated that she continued to lack independent or stable housing, she refused to participate in counseling for her mental health issues, she displayed aggressive behavior and used profane language during visits with the children, she failed to complete anger management counseling and parenting classes as required in the case plan, and she had a criminal history that included charges of assault and domestic violence.  With regard to father, the motion stated that he had been incarcerated multiple times since E.C.'s birth and he had a history of committing domestic violence against mother.

{¶ 9}  The trial court held a hearing on FCCS' motions for permanent custody on September 13, 2018.  On that date, both parents were in the custody of the Franklin County Sheriff, requiring the trial court to order them conveyed from the jail to the hearing.  Both mother and father testified at the hearing.  Additionally, the caseworker assigned to the family and the guardian ad litem for the children also testified.  The caseworker and guardian ad litem both recommended that the trial court grant FCCS permanent custody of the children.

{¶ 10} On November 1, 2018, the trial court entered judgments granting FCCS permanent custody of E.C. and D.C., Jr.  The trial court found by clear and convincing evidence that, pursuant to R.C. 2151.414(B)(1), the children had been in FCCS' custody for 12 months out of a consecutive 22-month period and awarding FCCS permanent custody was in the children's best interests.

{¶ 11} Mother now appeals the November 1, 2018 judgments, and she assigns the following errors:

> [1.] The trial court was without jurisdiction to grant permanent custody of D.C. Jr. to Franklin County Children's Services as the child had never been adjudicated a dependent minor.
>
> [2.] The trial court's finding that there were no relative placement options was not supported by the evidence and the court, therefore, committed reversible error by terminating Appellant's parental rights.

{¶ 12} Father also appeals the November 1, 2018 judgments, and he assigns as error:

> As to Appellant father, the trial court erred in granting the motions for permanent court commitment of the minor children in these cases.

{¶ 13} By mother's first assignment of error, she argues that the trial court lacked jurisdiction to grant permanent custody of D.C., Jr. to FCCS because the court did not first properly adjudicate D.C., Jr. a dependent child. We cannot resolve this argument because we do not possess the jurisdiction necessary to review any alleged error in the adjudication of D.C., Jr.

{¶ 14} Despite mother's assertion that no adjudication occurred, the trial court did adjudicate D.C., Jr. a dependent child. In the judgment entered on December 7, 2016, the trial court found that D.C., Jr. was dependent as defined in R.C. 2151.04(C), and it maintained a temporary order of custody originally issued by the magistrate on November 29, 2016. Subsequent to a dispositional hearing, the trial court issued a judgment on February 21, 2017 that reaffirmed its adjudication of D.C., Jr. as a dependent child and committed him to FCCS' temporary custody.

{¶ 15} In actuality, by her first assignment of error, mother complains not about the lack of a dependency adjudication, but about the trial court's failure to conduct an adjudicatory hearing that complied with Juv.R. 29. According to mother, the trial court erred by not making the advisements and findings required by Juv.R. 29(B), and by not requesting the parties to admit or deny the allegations in the complaint as required by Juv.R. 29(C). In response, FCCS argues that this court lacks jurisdiction to determine whether the trial court erred as alleged because mother failed to timely appeal the February 21, 2017 judgment.

{¶ 16} Generally, a party who wishes to appeal a judgment must file a notice of appeal within 30 days from the entry of a final, appealable order. App.R. 4(A). Failure to comply with the requirements of App.R. 4(A) results in a fatal jurisdictional defect. *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, ¶ 17. "Where a notice of appeal is not filed within the time prescribed by law, the reviewing court is without jurisdiction to consider issues that should have been raised in the appeal." *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60 (1988).

{¶ 17} In a juvenile custody case, a trial court determines whether a child is abused, neglected, or dependent in the beginning stage of the proceedings, called the adjudicatory stage. *In re A.N.*, 181 Ohio App.3d 793, 2009-Ohio-1873, ¶ 10 (8th Dist.). The case then proceeds to the dispositional stage, where the trial court makes one of the dispositions listed in R.C. 2151.353. *Id.* The potential dispositions include the commitment of a child to the temporary custody of a public children services agency. R.C. 2151.353(A)(2)(a). An adjudication that a child is dependent followed by a disposition awarding temporary custody to a pubic children services agency pursuant to R.C. 2151.353(A)(2) constitutes a final, appealable order. *In re H.F.* at ¶ 8; *In re Murray*, 52 Ohio St.3d 155 (1990), syllabus. When the adjudicatory and dispositional orders are separate orders, they combine to form a final, appealable order. *In re F.B.*, 9th Dist. No. 27762, 2016-Ohio-3434, ¶ 10.

{¶ 18} In the case at bar, FCCS initially assumed temporary custody of D.C., Jr. on November 29, 2016 pursuant to a temporary order of custody. A "temporary order of custody," abbreviated "TOC," is "[a] pre-dispositional custody order made by the court that places a child in the agency['s] custody, or an individual's custody, pending the adjudication of the complaint." Franklin County Children Services, *2019 Resource Guide*, 32, http://childrenservices.franklincountyohio.gov/public/documents/PDF103B5E8A-03F5DEADAF277AD4D863.pdf (accessed Sept. 16, 2019). The trial court then adjudicated D.C., Jr. a dependent child and continued the temporary order of custody. The trial court did not award temporary custody of D.C., Jr. to FCCS pursuant to R.C. 2151.353(A)(2)(a) until the February 21, 2017 judgment, in which the court granted FCCS a temporary court commitment regarding D.C., Jr. A "temporary court commitment," abbreviated "TCC," is a "[d]ispositional custody alternative in which the court orders a child to be placed in the temporary custody of the agency, or an individual, for a limited period of time." *2019*

*Resource Guide* at 32. Because the February 21, 2017 judgment contains the reaffirmed adjudication and a disposition under R.C. 2151.353, it is a final, appealable order.

{¶ 19} Mother, however, did not appeal the February 21, 2017 judgment. She instead waited until her appeal of the permanent custody determination to raise issues related to the adjudication. Under App.R. 4(A), the period for appealing errors in the adjudication of D.C., Jr. as a dependent child closed with the lapse of the 30-day window to appeal the February 21, 2017 judgment. We, therefore, lack the jurisdiction necessary to address any adjudication issues. *See In re P.S.*, 10th Dist. No. 08AP-1023, 2009-Ohio-1545, ¶ 8 (because the appellants failed to timely appeal the dependency adjudications and original disposition, the appellate court lacked jurisdiction to consider the appellants' argument that the trial court failed to comply with Juv.R. 29 during the adjudicatory hearing); *In re B.D.*, 4th Dist. No. 08CA3016, 2008-Ohio-6273, ¶ 22 (same); *In re Roberts*, 5th Dist. No. 04 CA 29, 2005-Ohio-2843, ¶ 19 (same). In this appeal, mother may only raise issues that arose after the February 21, 2017 judgment. *In re H.F.* at ¶ 17; *accord In re E.R.*, 10th Dist. No. 17AP-82, 2017-Ohio-7188, ¶ 50 (holding that, given the appellant's failure to timely appeal the dependency adjudication, issues related to that adjudication were settled and could not be litigated in an appeal of a permanent custody award).

{¶ 20} Mother disputes this conclusion by arguing that she did not waive her challenge to the adjudication by failing to assert it before the trial court. Mother misunderstands the nature of the impediment to our review of her arguments. The lack of jurisdiction, not the waiver doctrine, prevents us from deciding her first assignment of error.

{¶ 21} Mother also relies on the decision of *In re Fennel*, 4th Dist. No. 01CA45 (Jan. 23, 2002), to assert that the February 21, 2017 judgment is not a final, appealable order. *Fennel*, actually, stands for the contrary proposition; it recognized that "adjudicatory and dispositional orders, combined, result in a final appealable order." *Id.* at fn. 5. Nevertheless, in *Fennel*, the appellate court reviewed error that occurred in the adjudicatory hearing subsequent to the permanent custody determination because the clerk of courts failed to serve the judgment reflecting the adjudication and disposition on the appellant and note the service on the docket. Due to the clerk's failure to comply with Civ.R. 58(B), the 30-day period for the appeal never commenced, thus rendering the

appellant's appeal of the adjudicatory and dispositional judgment timely.  No such situation exists here.

{¶ 22}  In sum, we conclude that we lack jurisdiction to review mother's first assignment of error because she did not timely appeal the February 21, 2017 judgment.  We thus overrule that assignment of error.

{¶ 23}  By her second assignment of error, mother argues that the trial court erred in its consideration of the R.C. 2151.414(D)(1)(d) best interest factor.  We disagree.

{¶ 24}  The juvenile court may grant permanent custody of a child to a public children services agency "if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency * * * and that any of the following apply:"

> (a)  * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b)  The child is abandoned.
>
> (c)  The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d)  The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.
>
> (e)  The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a) through (e).

{¶ 25}  Once the juvenile court decides that one of the circumstances in R.C. 2151.414(B)(1) applies, the court turns to R.C. 2151.414(D) to decide if a grant of permanent custody is in the child's best interest.  Pursuant to R.C. 2151.414(D)(1), in determining a child's best interest, the juvenile court "shall consider all relevant factors, including, but not limited to, the following:"

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e).

{¶ 26} Here, the trial court found that the children met the criteria of R.C. 2151.414(B)(1)(d), as they had been in FCCS' temporary custody for 12 months of a consecutive 22-month period. After consideration of the R.C. 2151.414(D)(1) factors, the trial court concluded that granting FCCS permanent custody of E.C. and D.C., Jr. was in the children's best interests. On appeal, mother challenges the trial court's consideration of the R.C. 2151.414(D)(1)(d) best interest factor, and she specifically attacks the trial court's conclusion that a legally secure permanent placement could not be achieved for E.C. and D.C., Jr. by placing the children with the children's paternal grandmother ("grandmother").

{¶ 27} In analyzing the R.C. 2151.414(D)(1)(d) best interest factor, the trial court considered potential placement of E.C. and D.C., Jr. with a relative, but concluded that no such placement was appropriate. The trial court noted that FCCS rejected grandmother as a potential placement because baby furniture that FCCS had purchased and delivered to grandmother's house for E.C. had disappeared. FCCS had supplied the baby furniture in an attempt to equip grandmother's house so E.C. could safely reside there. Mother argues that the missing baby furniture did not provide a sufficient reason to reject grandmother as a suitable candidate to assume custody of the children.

{¶ 28} In response to mother's argument, FCCS first asserts that mother lacks standing to raise the argument. We are not persuaded. The possibility that a relative could provide a permanent placement for a child by assuming legal custody is relevant to the consideration of the R.C. 2151.414(D)(1)(d) best interest factor. The trial court's analysis of the R.C. 2151.414(D)(1)(d) best interest factor, along with the other factors, determines whether the court will grant permanent custody to an agency and terminate a parent's rights. Consequently, a parent has standing to vindicate his or her rights by asserting that the trial court erred during its best interest analysis by wrongly evaluating the possibility that a relative could provide a legally secure permanent placement. *In re J.P.*, 10th Dist. No. 18AP-834, 2019-Ohio-1619, ¶ 27. Mother, therefore, has standing to assert her argument.

{¶ 29} FCCS also argues that the trial court did not err in rejecting grandmother as a permanent placement because she did not file a motion for legal custody of the children. Unlike FCCS' first argument, this argument has merit. Once a child is adjudicated as abused, neglected, or dependent, a juvenile court may award legal custody of the child to a person who, pursuant to R.C. 2151.353(A)(3), has filed a motion requesting legal custody or is identified as a proposed legal custodian in a complaint or motion filed by a party. *In re J.P.* at ¶ 35. Here, grandmother did not move for legal custody of the children, and no party identified her as a potential legal custodian in a complaint or motion. The trial court, therefore, could not grant grandmother legal custody of the children. Because grandmother could not assume legal custody of the children, she could not qualify as a legally secure permanent placement for the children. Accordingly, we find no error in the trial court's consideration of the R.C. 2151.414(D)(1)(d) best interest factor, and we overrule mother's second assignment of error.

{¶ 30} Finally, we turn to father's sole assignment of error. Father assigns as error the trial court's failure to find him an unfit parent prior to granting FCCS permanent custody of E.C. and D.C., Jr. We disagree that the trial court erred as alleged.

{¶ 31} R.C. 2151.414(B)(1)(d), the authority under which the trial court granted FCCS permanent custody of E.C. and D.C., Jr., does not require a finding of parental unfitness prior to the termination of parental rights. *In re W.A.*, 10th Dist. No. 06AP-485, 2006-Ohio-5750, ¶ 18; *In re S.R.*, 10th Dist. No. 05AP-1356, 2006-Ohio-4983, ¶ 30; *In re*

*S.W.*, 10th Dist. No. 05AP-1368, 2006-Ohio-2958, ¶ 27. The omission of a statutory requirement to find parental unfitness does not deprive a parent of due process. *In re C.R.*, 7th Dist. No. 06 BE 53, 2007-Ohio-3179, ¶ 52; *In re Bray*, 10th Dist. No. 04AP-842, 2005-Ohio-1540, ¶ 7. The parent's due process rights are protected because the trial court has already implicitly determined that the parent is unfit by the time the court terminates the parent's rights under R.C. 2151.414(B)(1)(d). *In re C.R.* at ¶ 52.

{¶ 32} In the case at bar, the first implicit finding of parental unfitness occurred at the adjudicatory stage. In order to adjudicate a child dependent based on R.C. 2151.04(C), a trial court must necessarily conclude that the parents' custody is detrimental to the child. *In re Trowbridge*, 10th Dist. No. 03AP-405, 2004-Ohio-2645, ¶ 14; *In re Gales*, 10th Dist. No. 03AP-445, 2003-Ohio-6309, ¶ 9. Thus, when a court determines a child is dependent due to the child's poor condition or environment, the dependency adjudication implicitly involves a finding of parental unsuitability. *In re Trowbridge* at ¶ 14; *In re Gales* at ¶ 9; *accord In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus ("A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents."). Thus, here, when the trial court adjudicated E.C. and D.C., Jr. as dependent children under R.C. 2151.04(C), it implicitly found mother and father unfit parents.

{¶ 33} Second, parental unfitness is inherent in a trial court's finding of compliance with the "12 out of 22" rule contained in R.C. 2151.414(B)(1)(d). *In re W.A.* at ¶ 18; *In re S.R.* at ¶ 31; *In re S.W.* at ¶ 28. If a public children services agency assumes temporary custody of a child for at least 12 of the prior 22 months, the parents of the child are likely unable to demonstrate that they are able, suitable, or fit to care for the child. *In re Bray* at ¶ 8, quoting *In re Workman*, 4th Dist. No. 02CA574, 2003-Ohio-2220, ¶ 39. Consequently, R.C. 2151.414(B)(1)(d) implicitly establishes that a parent who cannot reunify with the child within the 12-month period is unable, unsuitable, or unfit to care for the child. *Id.* Thus, in this case, when the trial court found that E.C. and D.C., Jr. both remained in FCCS' temporary custody for at least 12 months, the trial court in effect determined that mother and father were unfit parents.

{¶ 34} Father does not contest that he was either jailed or imprisoned during the majority of the period between E.C.'s birth on April 26, 2015 and the permanent custody hearing on September 13, 2018. Obviously, an incarcerated parent is unable to care for children. While father now professes himself rehabilitated and fit to parent his children, his prior actions have resulted in circumstances that rendered him unfit to parent during much of his children's lives. " '[T]he natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 20, quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Here, the ultimate welfare of the children must prevail over father's plea for more time to demonstrate his fitness to raise his children. We thus find no error in the trial court's conclusion that a grant of permanent custody to FCCS is in the children's best interests. Accordingly, we overrule father's sole assignment of error.

{¶ 35} For the forgoing reasons, we overrule mother's two assignments of error, and father's sole assignment of error. We affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgments affirmed.*

BROWN and NELSON, JJ., concur.