[Cite as *In re R.M.*, 2012-Ohio-4290.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 98065 and 98066**

# IN RE: R.M., III, AND A.M.
# Minor Children
# (Appeal by Mother)

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Juvenile Division
Cuyahoga County Common Pleas Court
Case Nos. AD-10915317 and 11920129

**BEFORE:**  Blackmon, A.J., Rocco, J., and Keough, J.

**RELEASED AND JOURNALIZED:**  September 20, 2012

**ATTORNEY FOR APPELLANT**

Judith M. Kowalski
333 Babbitt Road
Suite 323
Euclid, Ohio 44123


**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**

Willliam D. Mason
Cuyahoga County Prosecutor

Joseph M. Cordiano
Stephanie L. Lingle
Assistant County Prosecutors
3955 Euclid Avenue
Cleveland, Ohio 44115

Gregory S. Millas
Assistant County Prosecutor
C.C.D.C.F.S.
811 Quincy Avenue, Rm. 444
Cleveland, Ohio 44104

**GUARDIAN AD LITEM FOR MOTHER**

Mark Witt
6209 Barton Road
North Olmsted, Ohio 44070

**GUARDIAN AD LITEM FOR CHILDREN**

Irina Vinogradsky
27600 Chagrin Blvd., Suite 420
Woodmere, Ohio 44122

PATRICIA ANN BLACKMON, A.J.:

{¶1} Appellant H.F. ("mother") appeals the juvenile court's decision terminating her parental rights and granting permanent custody of her children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). She raises the following assigned errors for our review:

> **I. The juvenile court erred to the prejudice of the appellant by permitting testimony from appellant's CCBDD caseworkers over objection of appellant, in that the testimony concerned privileged matters that were not subject to the exceptions in Ohio Revised Code Section 2317.02(G)(1)(g).**
>
> **II. The juvenile court abused its discretion to the prejudice of appellant by permitting the state to subpoena the appellant's caseworkers from CCBDD, as the state has no authority to obtain information from those caseworkers pursuant to Ohio Juvenile Rule 17(G).**
>
> **III. The juvenile court abused its discretion in determining that clear and convincing evidence supported its decision to award permanent custody to the Cuyahoga County Department of Children and Family Services; further, the award of permanent custody was against the manifest weight of the evidence.**
>
> **IV. The trial court abused its discretion in finding the award of permanent custody was in the best interests of the child.**

{¶2} Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.

**Facts**

**{¶3}** The mother has two children: R.M., III ("R.M." d.o.b.: October 17, 2007) and A.M. (d.o.b.: April 13, 2011). The children do not share the same father, and only R.M.'s father is known. The mother is mentally disabled as is R.M.'s father and R.M. R.M. was in his parents' custody until he was approximately three years old. He was removed and found to be dependent because his parents were unable to provide him with appropriate care. R.M. was not consistently receiving the services he needed to enhance his development and was significantly delayed in all areas of development. At the time R.M. was removed, he could not speak. R.M. was not being fed properly and had poor hygiene. As part of the case plan, the parents were to attend parenting classes.

**{¶4}** While R.M. was in temporary custody, the mother gave birth to A.M. A.M. was born with DiGeorge Syndrome and will require heart surgery in the future. She is also hearing impaired and has cataracts. A.M. spent a week in the neonatal care unit at the hospital. She was then was released to the mother. However, because of the concerns CCDCFS had with the mother's ability to care for R.M., A.M. was removed from the mother's care after one week.

**{¶5}** The mother resisted CCDCFS's attempts to help her to comply with the reunification plans for the children. The mother refused to attend parenting classes or receive counseling. R.M.'s father did attend parenting classes, but unfortunately, did not benefit from the classes. When he was asked to continue parenting classes, he refused. Visitation was sporadic by the mother, who would sometimes not visit for several months. R.M.'s father was better with visitation, but stopped visiting altogether in November

2011. The trial court granted permanent custody of the children to CCDCFS based on the parents' failure to remedy the problems that caused the children to be removed from the home, the parents' mental disabilities, which prevented them from being able to provide appropriate care for the special needs children, and the parents' failure to comply with the case plan.

## Testimony by Caseworker

{¶6} The mother's first and second assigned errors will be addressed together. Because the mother is mentally disabled, she has an assigned caseworker from the Cuyahoga County Board of Developmental Disabilities ("CCBDD") to assist her with her daily living. Mother argues that her caseworker should not have been permitted to testify to privileged communications pursuant to R.C. 2317.02(G)(1) and that CCDCFS should have been prohibited pursuant to Juv.R. 17 from issuing a subpoena for the privileged information.

{¶7} Generally, social workers and counselors cannot testify regarding information that a client shares with them because such information is privileged. R.C. 2317.02(G)(1). However, R.C. 2317.02(G)(1) does provide for exceptions to the rule. The statute provides in pertinent part that a counselor can testify if:

> **(a) The communication or advice indicates clear and present danger to the client or other persons. For the purposes of this division, cases in which there are indications of present or past child abuse or neglect of the client constitute a clear and present danger.**
>
> **\* \* \***
>
> **(g) The testimony is sought in a civil action and concerns court-ordered treatment or services received by a patient as part of a case plan**

**journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code.**

{¶8} The communications the caseworker had with the mother were not privileged according to R.C. 2317.02(G)(1)(a) because whether the mother could provide care and a safe environment for the children was the critical issue for the court in determining whether to grant permanent custody to CCDCFS.

{¶9} Also, although the mother received assistance from the CCBDD prior to the birth of her children, the services were also part of her parenting plan for reunification of R.M. and A.M. (The reunification plan of A.M. was merged with R.M. in May 2011.) A parent who is required to undergo court-ordered treatment as part of a case plan prepared by CCDCFS effectively waives his or her rights to confidentiality of communications with a treating physician or social worker. *See* R.C. 2317.02(G)(1)(a); *In re: D.E.P.*, 8th Dist. No. 92226, 2009-Ohio-3076. Because receiving assistance and counseling was part of the mother's reunification plan, her communications with her caseworker were not privileged.

{¶10} Moreover, even if the testimony was privileged its admission was harmless error. The caseworker did not provide the only testimony. The social worker from CCDCFS also presented testimony regarding the mother's lack of parenting skills and refusal to comply with the case plan. Therefore, even without the caseworker's

testimony, there was overwhelming evidence presented by the CCDCFS social worker to support the trial court's decision to grant permanent custody to CCDCFS. Accordingly, the mother's first and second assigned errors are overruled.

## Permanent Custody

{¶11} In her third assigned error, the mother argues that the trial court's decision to award permanent custody of the children to CCDCFS was not supported by clear and convincing evidence.[1]

{¶12} It is well established that the right to parent one's children is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. Nevertheless, a government agency has broad authority to intervene when necessary for the child's welfare or in the interests of public safety. *Id.* at ¶ 28-29, citing R.C. 2151.01(A). In accordance with R.C. 2151.414, a trial court may grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d) applies and that an award of permanent custody is in the child's best interest. *Id.* at ¶ 23. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

---

[1]We note that in arguing against permanent custody the mother's counsel refers to the father's interaction with R.M. and the father's attempts to comply with the case plan; however, the father has not appealed the trial court's determination and the mother's counsel does not represent him.

**{¶13}** The factors under R.C. 2151.414(B)(1) include the following: (a) the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.

**{¶14}** The trial court concluded that the R.M. and A.M. could not be placed with the mother within a reasonable period of time. R.C. 2151.414(E) sets forth the factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. The existence of one factor alone will support a finding that the child cannot be reunified with the parent within a reasonable time. *See In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738.

**{¶15}** Although one factor under R.C. 2151.414(E) is sufficient to support the finding, the trial court in the instant case listed several factors. The court found that 1) in spite of planning and diligent efforts by the agency to assist the parents in remedying the problems that initially caused the children to be placed outside the home, the mother and father had failed continuously and repeatedly to substantially remedy the conditions that caused the children to be placed outside the home. (E)(1); 2) the mother's and father's mental disabilities caused them to be unable to care for the children, one of whom is also cognitively delayed. (E)(2); and, 3) although parenting classes were offered to both

parents along with a personal parental aide, the father had not benefitted from the classes, and the mother was non-compliant with the offered services.  (E)(1).

{¶16}  We conclude these findings were supported by clear and convincing evidence.  Mother has refused to attend parenting classes, which she obviously needs. For instance, her case worker testified that once the mother had told her that she had a fever of 98 degrees.  When the caseworker asked what she thought a normal temperature was, she stated 65 degrees.  This is troubling because A.M. was born with DiGeorge Syndrome, which has plagued her with many physical problems.  She will require heart surgery in the future, is hearing impaired, and also has cataracts.

{¶17} R.M. was removed from parental care due to neglect and dependency.  At three years old, he was still not speaking.  The parents disciplined him by placing him in a playpen without explaining to him why he was being isolated.  The mother resisted transitioning R.M. from a bottle to a sippy cup.  During one visit, the caseworker noted that R.M. was drinking sour milk from the bottle.  It also appeared the child woke up on his own and put himself to bed.  There were also concerns regarding the child opening the refrigerator to feed himself, exposure to a litter box, and unsafe electrical cords and a fan within reaching distance.  The mother was also resistant to playing with R.M. Without parenting classes, the mother is unable to learn the basic skills of parenting.

{¶18} During visitations, the mother was observed to be capable of changing A.M.'s diaper and feeding her.  However, she rarely interacted with R.M.  When R.M.'s father did not join the mother at visitation, she struggled with handling both children.

The mother's visitations were also not consistent. Visitation was set for R.M. every two weeks starting in September 2010. Mother came for the first three visits and then failed to visit R.M. until May 2011, which was after A.M. was born. In fact, R.M.'s foster parents held a birthday party for R.M. for his first birthday in their care in October 2010. Although the foster parents held the party on the westside of Cleveland to make it easier for the biological parents to attend, they failed to attend. They also did not visit on his most recent birthday.

{¶19} The mother attended visitation in May and June of 2011, but did not visit again until October 26, 2011. She attended one visitation in November, but did not attend in December 2011. She attended one visitation in January 2012 and one in February 2012. This history of inconsistent visitation supports the trial court's finding that there is a lack of commitment towards the children. In fact, when more than 90 days has elapsed, as was the case herein, the parents are considered to have abandoned their children pursuant to R.C. 2151.011(C), which provides that, for purposes of R.C. Chapter 2151, a presumption of abandonment arises when the children's parents "have failed to visit or maintain contact with the children] for more than ninety days[.]" Here, the mother did not visit R.M. for over five months at one point, and failed to visit both R.M. and A.M. at another time for over four months.

{¶20} We conclude that clear and convincing evidence supports the trial court's determination that the children could not be reunited with the mother within a reasonable period of time. The mother's third assigned error is overruled.

## Best Interest of the Children

**{¶21}** In her fourth assigned error, the mother argues that the evidence did not show that permanent custody was in the best interest of the children.

**{¶22}** Having satisfied R.C. 2151.414(B)(1), the only other finding the court was required to make was that an award of permanent custody was in the best interest of the child. *See In re D.A.*, 8th Dist. No. 95188, 2010-Ohio-5618. R.C. 2151.414(D)(1) sets forth the relevant factors a court must consider in determining the best interest of the child. These factors include, but are not limited to the following: (a) the child's interaction and interrelationship with the child's parents, siblings, relatives, and foster caregivers; (b) the child's wishes expressed directly or through a GAL; (c) the child's custodial history; (d) the child's need for legally secure permanent placement and if that type of placement can be obtained without granting permanent custody to the agency; and (e) whether any factors listed in R.C. 2151.414(E)(7)-(11) apply.

**{¶23}** The mother's lack of interaction with the children supports the trial court's conclusion that permanent custody to CCDCFS was in their best interest. (R.C. 2151.414(D)(1)(a)). As we set forth above, the mother's visitations were inconsistent. R.M. has failed to form a strong bond with his mother as she rarely interacts with him. A.M. was ten months old at the time of the hearing, so it is hard to determine the bond she has established with the mother; however, the fact that the mother failed to visit the baby for half of her life, obviously indicates a lack of a bond.

**{¶24}** The GAL also recommended permanent custody of the child to CCDCFS. Both children are thriving in their foster homes. R.M. has bonded with his foster parents and his foster brother. He is speaking and learning sign language. He is also learning by mimicking his younger foster brother. His foster parents would like to adopt R.M. if permanent custody is granted.

**{¶25}** A.M. is likewise thriving in her foster home. Given her health concerns, it is vital that she be in a home where her needs can be taken care of. By failing to attend parenting classes, the mother has failed to take advantage of the opportunity to learn to care for a healthy child, let alone one with special health concerns. Although the children will live in separate homes, the foster families thus far have made sure that the children have opportunities to visit with each other.

**{¶26}** Based on the evidence presented, the trial court did not err in concluding that granting permanent custody of the children to CCDCFS was in the best interest of the children. Accordingly, the mother's fourth assigned error is overruled.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, ADMINISTRATIVE   JUDGE

KENNETH A. ROCCO, J., and
KATHLEEN ANN KEOUGH, J., CONCUR