[Cite as *In re D.F.*, 2023-Ohio-1373.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE D.F.                                        :
                                                  :
                                                          No. 112066
A Minor Child                                     :
                                                  :
[Appeal by Mother]                                :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 27, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-21-910094

***Appearances:***

Sylvester Summers, Jr., Co., LPA, and Sylvester Summers, Jr., *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

MARY J. BOYLE, J.:

{¶ 1}  Appellant-Mother ("Mother") asks us to determine whether the trial court abused its discretion in awarding permanent custody of D.F. to the Cuyahoga County Department of Children and Family Services ("CCDCFS").  Mother maintains that CCDCFS failed to show by clear and convincing evidence that

adequate grounds existed for a grant of permanent custody and argues the juvenile court's decision was contrary to the manifest weight of the evidence. We disagree and affirm the juvenile court's award of permanent custody to CCDCFS.

## I. Facts and Procedural History

{¶ 2} This matter began in November 2021 after a 696-KIDS hotline call alerted CCDCFS that Mother and D.F. tested positive for fentanyl and methadone at the time of D.F.'s birth on November 2, 2021. The intake worker requested emergency custody due to Mother's history with CCDCFS, Mother's issues with substance abuse and mental health, and the alleged father's inability to provide care due to his physical health.

{¶ 3} Accordingly, CCDCFS filed a complaint for abuse, dependency, and temporary custody and a motion for predispositional temporary custody on November 9, 2021. At the time of the filings, Mother held legal custody of D.F. The complaint and motion alleged Mother and D.F. tested positive for fentanyl and methadone when D.F. was born; Mother had a chronic substance abuse problem and could not provide a safe and appropriate home for D.F.; Mother had mental health issues that prevented her from providing adequate care for D.F.; Mother lacked stable and independent housing; Mother had three older children who were removed from her care; the alleged father had not yet established paternity and was unable to care for D.F.; and any other potential father failed to establish paternity, provide support, visit, or communicate with D.F. since birth. A hearing was held that same day. Mother, by and through counsel, denied the allegations of the

complaint and stipulated to a finding of probable cause to the motion for pre-dispositional temporary custody. Testimony was heard and the juvenile court granted CCDCFS's motion finding that there was probable cause for removal of the child pursuant to R.C. 2151.31, removal was in the best interest of the child, and reasonable efforts were made to prevent such removal. D.F. was committed to the emergency temporary care and custody of CCDCFS since there was a not a suitable relative who was willing to be a temporary custodian.

{¶ 4} A pretrial was scheduled for December 8, 2021, and rescheduled to December 22, 2021, since service had not yet been perfected. An arraignment hearing before the family drug court jurist was also set for December 22. Neither parent appeared for the pretrial and arraignment. An oral motion for the matter to be heard on the regular docket was entered by CCDCFS and granted by the magistrate. A subsequent pretrial was scheduled for January 27, 2022.

{¶ 5} Prior to the pretrial, a guardian ad litem ("GAL") was appointed for D.F. and a notice of representation and request for discovery was filed on behalf of Mother. The juvenile court was advised at the pretrial that Mother was presently in Portage County Jail. Trial was set for February 25, 2022. A report was submitted by the GAL and a witness and exhibit list was filed by CCDCFS.

{¶ 6} On February 25, CCDCFS entered an oral motion to amend the complaint. The juvenile court granted the motion with the agreement of the parties. Mother admitted to the allegations of the complaint as amended. The court heard testimony and accepted evidence, found that the allegations of the amended

complaint were proven by clear and convincing evidence, and held that D.F. was adjudicated to be abused and dependent. CCDCFS orally requested to move for disposition, the parties agreed to proceed immediately, and the juvenile court did so. D.F. was committed to the temporary custody of CCDCFS and the permanency plan of reunification was approved.

{¶ 7} In May 2022, CCDCFS moved to modify the temporary custody order, grant permanent custody to CCDCFS, terminate parental rights, and approve the modified case plan. The motion included an affidavit from the CCDCFS social worker of record, Ashly Little ("Social Worker"), attesting that Mother had not addressed her substance abuse or mental health issues as required by the case plan. Social Worker further attested that Mother had participated in substance abuse and mental health services in the past but had not been able to maintain sobriety or address her mental health needs consistently. Social Worker also stated that Mother had not visited D.F. since November 2021 and was incarcerated on a three-year sentence without eligibility for release until December 2025. Lastly, Social Worker attested that the alleged father had not established paternity as required by the case plan and failed to support, visit, or communicate with D.F. since birth. A preliminary hearing was set for June 30, 2022.

{¶ 8} On June 30, a conference was held, and the matter was continued to July 18, 2022. In the interim, a new GAL was assigned. On July 18, an attorney conference was held and the matter was set for trial September 13, 2022. CCDCFS filed witness and exhibit lists and a report was filed by the newly appointed GAL.

{¶ 9} At the trial on September 13, the juvenile court heard testimony from Social Worker. Social Worker testified that she had prior involvement with the family after having been assigned to D.F.'s older sibling's case in February 2021. That case also involved concerns regarding Mother's substance abuse, mental health, and ability to provide stable housing and basic needs. Ultimately, that case concluded with CCDCFS receiving permanent custody of D.F.'s older sibling in July 2021 due to Mother's "evasiveness, uncooperativeness, and lack of plan completion." (Sept. 13, 2022, tr. 10.) Mother had previously lost legal custody of two older children in 2016 for substance abuse and mental health reasons as well.

{¶ 10} Social Worker testified that she submitted alert letters in May 2021 after learning that Mother was pregnant with D.F. The November 2021 696-KIDS hotline call alerted CCDCFS to Mother and D.F.'s positive test results for fentanyl and methadone at the time of D.F.'s birth, reopened Mother's case, and spurred an incident investigation. Emergency custody was granted to CCDCFS as a result and D.F. was placed in the same foster home as her sibling upon discharge from the hospital. In February of 2022, temporary custody was granted to CCDCFS. At that time, a case plan for substance abuse and mental health was developed for Mother to achieve the permanency goal of reunification.

{¶ 11} Social Worker further testified that except for a brief two-week period following D.F.'s birth, Mother was incarcerated in Cuyahoga and Portage County jails. Social Worker explained that Mother was charged with DUI and incarcerated in Cuyahoga County soon after giving birth to D.F. Mother was released with a GPS

monitor in December 2021, which she removed creating another capias in Cuyahoga County. Mother was arrested in Portage County about two weeks after her December release for unauthorized use of a vehicle, receiving stolen property, and failure to comply. She is currently serving a three-year prison sentence in Marysville as a result of the Portage County convictions. Mother is not expected to be released until December 2025.

{¶ 12} Social Worker stated that while Mother completed a 12-session sober program while incarcerated, it did not fulfill the CCDCFS case plan objectives "because when mom was available and not incarcerated, she did not complete a program." (Sept. 13, 2022, tr 17.) Nor did Mother complete an updated mental health assessment as required by the case plan despite Social Worker's several attempts to contact and engage Mother. Social Worker testified that Mother had one virtual video visit with D.F. while incarcerated in Cuyahoga County. Social Worker advised that D.F. was placed in a foster home with her older sibling and explained:

> I've visited with the foster family and these two children, well, obviously, since December 2021, and then the previous child since February 2021. I only observed positive bonding, attachment, developmental needs being met.
>
> Both children due to the substance abuse exposure had needs, which are being addressed with physical therapy, occupational therapy that the foster home facilitates and is linked to those services.
>
> Children are up-to-date medically. The child is well taken care of. The older sibling identifies the child as her sister. There is definitely a bond. We were just talking about how the baby does not like to be put down, and, therefore, is attached to the hip of the foster mother.

(Sept. 13, 2022, tr. 21.) Social Worker testified that she believed permanent custody was in the best interest of D.F. for the following reasons:

> I understand that mother is currently incarcerated until 2025, however, if mom was even available now, I don't — based on her history, I do not see her engage with and being compliant with services, including just visitation.
>
> While she was in Cuyahoga County the second time was the only time she ever asked for visitation. She didn't ask for visitation while * * * first [incarcerated] — November to December, and even when she was in Portage County. So I don't foresee or even picture mom being committed to sobriety and committed to addressing her concerns and rectifying issues that we had at removal of both children, as she repeated the same behavior twice within a year's time.

(Sept. 13, 2022, tr. 22.) Social Worker further explained why CCDCFS "moved quickly" for permanent custody:

> We moved fast because of — I wouldn't say we moved fast. We — We're trying to ensure the child's permanency due to mother's behavior and her history and her current incarceration status. * * * So with her being incarcerated, we had no other — we did not have enough support to request an extension of temporary custody due to her history and not complying with services.

(Sept. 13, 2022, tr. 29-30.)

{¶ 13} Social Worker also testified that paternity had not been established for the alleged father or any other father. Social Worker also noted the alleged father was unable to physically provide care for D.F. due to his physical health. Social worker testified that the alleged father had not visited or communicated with D.F. since birth and that despite monthly home visits and mailings, she had "zero" contact with the alleged father.

{¶ 14} Mother's counsel argued that CCDCFS "pretty much dismissed the mother's role in this child's life from the beginning, since birth." (Sept. 13, 2022, tr. 34.) In support of her request for an extension of temporary custody, Mother's counsel asserted there was substantial compliance with the case plan due to completion of a 12-session sober living program, it was not clear that Mother did not want visitation, and Mother would be seeking early judicial release.

{¶ 15} The GAL advised the juvenile court that D.F. was very bonded with both her foster family and older sibling. It was the GAL's recommendation that permanent custody be granted.

{¶ 16} Following trial, the juvenile court stated that "[i]n this case, the outcome is extremely clear cut" and found:

– Abandonment of D.F. by both parents.

– Failure to remedy the causes of D.F.'s removal.

– Lack of commitment shown to D.F. by both parents.

– No clear and convincing evidence that the parents could provide legally secure permanent placement and adequate care for the health, welfare, and safety of D.F.

– The termination of Mother's parental rights for D.F.'s older sibling based on a prior journal entry granting permanent custody to CCDCFS, submitted as exhibit No. 1.

– Unavailability of Mother to care for D.F. due to incarceration.

– Repeated incarceration that prevented Mother from providing care to D.F.

– Intensive efforts made by CCDCFS to locate relatives.

- Reasonable efforts made by CCDCFS to finalize the permanency plan through referrals for establishing paternity, substance abuse, and housing.

- A clear recommendation by the GAL that permanent custody was in the best interest of D.F.

(Sept. 13, 2020, tr. 36-38.) The court further noted, "The child is too young to verbally express wishes, but she is well-bonded to her sister, her foster family. This is the only family that she has known." (Sept. 13, 2020, tr. 36.) The following factual findings were made in the court's journal entry granting CCDCFS's motion for permanent custody:

> D.F. was removed from the custody of the mother November 10, 2021 after the child's birth and removed from the hospital. Both mother and child tested positive for fentanyl and methadone at the birth of the child. The mother only visited with the child while the child was in the hospital. The mother was incarcerated soon after the birth of the child. The mother had only one video visit with the child in December 2021 while mother was incarcerated at the Cuyahoga County Jail. The mother lost custody of two other children in 2016 due to substance abuse and mental health and were placed in the legal custody of the maternal grandmother. The mother had her parental rights terminated of another child in July 28, 2021 due to mother's substance abuse; see CCDCFS' Exhibit 1, L.F. AD20908345. The mother has been in and out of jail since the birth of the child and the only time she has not been incarcerated during the child's life was two weeks in December of 2021. The mother is currently incarcerated and has a release date of December 2025. The mother has not engaged in services and has not completed case plan objectives. The alleged father was unable to provide care for the child due to his fragile health. The alleged father only visited with the child after birth while the child was in the hospital. The alleged father has had no contact with the child and has failed to support or visit the child after released from the hospital. The alleged father has had zero contact with the social worker and [CCDCFS]. The alleged father has not established paternity. The alleged father's whereabouts are unknown. The child has been in foster care since released from the hospital and has been placed in the same foster home as her sibling. The child is well bonded with the older sibling and is attached to the hip of the foster mother. The child's needs are being

met and medical needs due to withdrawals. The foster parent is willing to adopt the child.

*In re D.F.*, Cuyahoga J.C. No. AD21910094 (Sept. 27, 2022). Based on these facts, the juvenile court made statutory findings pursuant to R.C. 2151.414(B), (D), and (E), held permanent custody was in the best interest of the child, and approved the plan of permanent custody and adoption.

{¶ 17} Mother now appeals, raising the following assignment of error for review:

> **Assignment of Error**: The trial court erred in awarding permanent custody to [CCDCFS] as CCDCFS failed to show by clear and convincing evidence that adequate grounds existed for a grant of permanent custody and therefore such decision was contrary to the manifest weight of the evidence.

## II. Law and Analysis

{¶ 18} As an initial matter, we note that Mother's brief did not include a statement of facts and did not cite any portion of the record as required by App.R. 16(A)(6) and (7). Nevertheless, we will review her argument because the termination of parental rights is the "'family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 19} In her single assignment of error, Mother argues that the juvenile court "improperly found the child could not or should not be returned to the mother within a reasonable time." Mother claims the juvenile court's decision was contrary to the manifest weight of the evidence and its best interest determination was not

supported by clear and convincing evidence. Mother argues, "The trial court should have determined that there was no abuse of discretion in not granting [her] an additional 6-month extension of temporary custody." Mother claims she "should have been given an extension of temporary custody so that she can file for judicial release and continue with her sobriety." To support her argument, Mother notes that she completed 12 sessions of a sober living program and "has been taking steps to live a sober lifestyle." However, Mother also concedes that she "did not accomplish more than miniscule compliance with only a few of the case plan requirements." Mother further admits

> the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses. Nothing in the record of this case suggests that the mother's behavior would change if given more time to work on her case plan.

> The evidence demonstrated very little success the mother had made on the case plan. On that point the evidence demonstrates that any improvement that mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. It appears the mother cannot raise her child without the structure and the support of CCDCFS. Without the involvement of numerous outside resources, the mother simply is unable at this time to maintain a safe and structured environment in the home and to remain drug free.

{¶ 20} CCDCFS argues that the juvenile court's permanent custody determination is supported by clear and convincing evidence. CCDCFS maintains that the juvenile court complied with statutory requirements and made all relevant statutory findings. These include specific findings related to R.C. 2151.414(E)(1), (4), (10), (11), (12), and (13), which, according to R.C. 2151.414(E), mandated that

D.F. could not or should not be returned to Mother. CCDCFS further argues that the trial court considered the factors listed in R.C. 2151.414(D)(1) and sufficient evidence was presented to support a finding of at least one of the five factors. Thus, it contends that the trial court did not abuse its discretion in determining that permanent custody was in the best interest of the child. CCDCFS notes that Mother does not specifically challenge any of the juvenile court's individual findings despite the argument that she should have been given more time to achieve reunification.

{¶ 21} When reviewing a juvenile court's judgment in child custody cases, the Ohio Supreme Court has stated that the "court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion." *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997).

{¶ 22} We recognize that the "[t]ermination of parental rights is an alternative of last resort but is sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). Before a court may terminate parental rights and award permanent custody of a child to the proper agency, it must determine by clear and convincing evidence that (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) an award of permanent custody is in the child's best interest. R.C. 2151.414(B).

{¶ 23} "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be

established.'" *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). "Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 24} "'An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence.'" *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28, quoting *In re Jacobs*, 11th Dist. Geauga No. 99-G-2231, 2000 Ohio App. LEXIS 3859, 11 (Aug. 25, 2000), citing *In re Taylor*, 11th Dist. Ashtabula No. 97-A-0046, 1999 Ohio App. LEXIS 2620 (June 11, 1999). *See In re AR.S.*, 2021-Ohio-1958, 174 N.E.3d 28 (8th Dist.).

### a. R.C. 2151.414(B)(1)(a)-(e) Factors

{¶ 25} Pursuant to R.C. 2151.414(B)(1):

[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that *any* of the following apply:

(a) The child is not abandoned or orphaned [or] has not been in the temporary custody of one or more public services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

(Emphasis added.) "Only one of the factors must be present to satisfy the first prong of the two-part analysis for granting permanent custody to an agency." *In re D.H.*, 8th Dist. Cuyahoga No. 110505, 2021-Ohio-3821, ¶ 27, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657.

{¶ 26} The juvenile court must consider all relevant evidence when determining whether R.C. 2151.414(B)(1)(a) is applicable and, if any of the factors contemplated by R.C. 2151.414(E)(1)-(16) exist as to each of the child's parents, the juvenile court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E). Only one of the enumerated factors under R.C. 2151.414(E) is required for the court to make such a finding. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 29, quoting *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000), and citing *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14 (the existence of only one factor will support the

court's finding that the child cannot be reunified with the parent within a reasonable time).

{¶ 27} With respect to R.C. 2151.414(B)(1)(b) and 2151.414(E)(10), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶ 28} Here, the juvenile court determined R.C. 2151.414(B)(1)(a) was applicable because the following (E) factors exist:

(E)(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

(E)(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(E)(10) The parent has abandoned the child.

(E)(11) The parent has had parental right terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to prove, that notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

([E])(12) The parent is incarcerated at the time of the filing of the Motion for permanent custody or the dispositional hearing of the child

and will not be available to care for the child for at least [18] months after the filing of the Motion for permanent custody or dispositional hearing.

(E)(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(Judgment entry, Sept. 27, 2022.) Therefore, D.F. could not be placed with her parents within a reasonable period of time or should not be placed with either parent.

{¶ 29} The juvenile court further found D.F. was abandoned pursuant to R.C. 2151.414(B)(1)(b). The court reasoned, "The mother has only had one visit with the child via Zoom video while she was incarcerated in Cuyahoga County jail in December 2021. The alleged father has not visited the child since her release[ ] from the hospital and placed in the care of CCDCFS." *Id.* Mother does not address the applicability of R.C. 2151.414(B)(1)(b) on appeal.

{¶ 30} The juvenile court's findings regarding R.C. 2151.414(B) and (E) are supported by the evidence in the record. For example, clear and convincing evidence supports the court's determination that D.F. was abandoned pursuant to R.C. 2151.414(E)(10) and 2151.414(B)(1)(b). The same evidence demonstrates a lack of commitment pursuant to R.C. 2151.414(E)(4).

{¶ 31} The record reflects Mother was incarcerated in various counties but for a two-week period throughout D.F.'s 10-month life. Mother was to remain incarcerated until 2025. From D.F.'s birth in November 2021 to the trial in September 2022, Mother had only one Zoom visit with D.F. The alleged father, who

never established paternity, had not visited or contacted D.F. since her birth. Thus, the record supports the trial court's finding that D.F.'s parents failed to visit or maintain contact with D.F. for more than 90 days, raising the presumption of abandonment.

{¶ 32} The record does not contain any evidence suggesting either parent attempted to maintain contact with D.F. to rebut that presumption. Rather, Social Worker testified, "[Mother] had opportunity to ask every day if she — went through [the] protocol [of going to her liaison while in Portage County]. Just like she was able to get virtual visitation through Cuyahoga County, because she asked * * *." (Sept. 13, 2022, tr. 27.) Social Worker further advised that despite monthly attempts, she has had "zero contact" with the alleged father.

{¶ 33} Because the juvenile court's application of one or more R.C. 2151.414(B) factors is supported by clear and convincing evidence, the first prong of the two-part test to terminate parental rights and award permanent custody to CCDCFS is met.

### b. The Child's Best Interest

{¶ 34} In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 35} Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in deciding to award permanent custody, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re L.W.*, 2019-Ohio-1343, at ¶ 39, citing *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000).

{¶ 36} Here, the juvenile court found permanent custody to be in the best interest of the child. The court noted that it considered the relevant factors of R.C. 2151.414(D)(1) as well as any applicable factors in division (E)(7)-(11) and found

the factors in (D)(1) weigh[ ] in favor of permanent custody. The child is too young to express her wishes.

The [GAL] for the child[ ] recommends permanent custody as being in the best interest of the child.

> There is evidence that one or more of the factors in [R.C. 2151.414(E)] exist and the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent; no relative or other interested person has filed or has been identified in a motion for legal custody of the child.
>
> Therefore, it is in the best interest of the child to be placed in the permanent custody of [CCDCFS].

(Judgment entry, Sept. 27, 2022.)

{¶ 37} Mother concedes "the court clearly considered all relevant factors, as well as additional factors listed in [ ]R.C. 2151.414(E)." Mother further concedes

> [t]he court did not specifically tie its analysis to the enumerated factors, instead providing more general, yet still comprehensive, analysis. It is clear that the court focused on stability in particular; it is equally clear from the court's findings that the court did not find that Appellant could provide permanent stability.

{¶ 38} Despite these concessions, we provide the following analysis and find that permanent custody is in the best interest of D.F. The evidence demonstrates that D.F. had little to no interaction with her parents; was bonded to her sister, with whom she was placed in a foster home; and was "attached to the hip" of her foster mother. The GAL recommended permanent custody and believed it to be in the best interest of D.F. D.F. needed legally secure permanent placement that could provide for her basic needs as well as her substance abuse exposure needs. Such a placement could not be achieved without a grant of permanent custody to the agency due to the ongoing incarceration of Mother, mental health and substance abuse concerns regarding Mother, non-established paternity, abandonment of D.F. by Mother and

the alleged father, and noninvolvement of other relatives or interested persons. Moreover, several R.C. 2151.414(E) factors apply.

{¶ 39} Based on the foregoing, we find there is clear and convincing evidence in the record to support the juvenile court's determination that permanent custody to CCDCFS is in the child's best interest. Accordingly, we hold that the court did not abuse its discretion in determining that permanent custody of the child be awarded to CCDCFS.

{¶ 40} Therefore, Mother's single assignment of error is overruled.

## III. Conclusion

{¶ 41} The juvenile court's findings and its judgment granting permanent custody of D.F. to CCDCFS are supported by clear and convincing evidence in the record.

{¶ 42} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
SEAN C. GALLAGHER, J., CONCUR